UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| GLORIA JEFFERSON, | ) | No. EDCV 09-1248 FFM |
| Plaintiff, | ) ) | MEMORANDUM DECISION AND ORDER |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying her application for disability benefits. On July 22, 2009 and August 20, 2009, plaintiff and defendant, respectively, consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the case management order entered on July 20, 2009, on February 11, 2010, the parties filed a Joint Stipulation (the "JS") detailing each party's arguments and authorities. The Court has reviewed the administrative record (the "AR"), filed by defendant on December 7, 2009, and the JS. For the reasons stated below, the decision of the Commissioner is reversed and the matter is remanded for further proceedings.

/ / /

/ / /

/ / /

## PROCEDURAL HISTORY

On November 11, 2007, plaintiff filed an application for disability benefits. Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). ALJ John Kays held a hearing on July 9, 2008. (AR 21 - 39.) Plaintiff appeared with counsel and testified at the hearing. (*See id.*)

On August 6, 2008, the ALJ issued a decision denying benefits. (AR 7 - 18.) On August 15, 2008, plaintiff sought review of the decision before the Social Security Administration Appeals Council. (AR 4 - 5.) The Appeals Council denied plaintiff's request for review on April 15, 2009. (AR 1 - 3.)

Plaintiff filed her complaint herein on July 2, 2009.

## CONTENTIONS

Plaintiff raises four issues in this action:

1. Whether the ALJ erred in relying on the testimony of the vocational expert that claimant could perform her past relevant work since it conflicted with the dictionary of occupational titles;

2. Whether the ALJ erred in evaluating the claimant's residual functional capacity at step four by improperly rejecting the less than sedentary opinion of the treating physician, Dr. Khoo-Miyaki, in favor of the testifying medical witness;

3. Whether the ALJ failed to make proper credibility findings as to the claimant's testimony; and

4. Whether the ALJ erred in evaluating the severity of the claimant's mental impairment and associated functional limitations.

/ / /
/ / /
/ / /

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.,* 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, even if substantial evidence exists in the record to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003).

# DISCUSSION

1. <u>Whether the ALJ erred in relying on the testimony of the vocational expert that claimant could perform her past relevant work since it conflicted with the dictionary of occupational titles.</u>

Plaintiff contends that the ALJ's finding at step four that she could perform her past relevant work both as actually and generally performed is contradicted by the Dictionary of Occupational Titles ("DOT"). (See AR 18.) Defendant concedes that the DOT definition of Advertising Sales Representative is inconsistent with the residual functional capacity ("RFC") found by the ALJ. However, defendant contends

/ / /

that the DOT only relates to work as generally performed and that plaintiff's work as actually performed is consistent with the limitations found by the ALJ.

At step four of the sequential evaluation process, a claimant must establish that his severe impairment or impairments prevent him from doing past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The claimant has the burden of showing that he can no longer perform his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 331-32 (9th Cir. 1990). Although the burden of proof lies with the claimant, the ALJ still has a duty to make the requisite factual findings to support his conclusion. *Pinto*, 249 F.3d at 844-45.

In order to determine whether a claimant has the residual functional capacity to perform his past relevant work, the ALJ must evaluate the work demands of the past relevant work and compare them to the claimant's present capacity. *Villa v. Heckler*, 797 F.2d 794, 797-98 (9th Cir. 1986). Social Security Ruling ("S.S.R.") 82-62 states that a determination that a claimant has the capacity to perform a past relevant job must include the following specific findings of fact: (1) a finding of fact as to the claimant's residual functional capacity ("RFC"); (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the claimant's RFC permits him or her to return to the past job or occupation. *See* S.S.R. 82-62, 1982 WL 31386 (S.S.A.) at *4; *see also Pinto*, 249 F.3d at 844-45.

The determination requires a careful appraisal of the claimant's statements, the medical evidence, and, in some cases, corroborative information such as the Dictionary of Occupational Titles ("DOT"). S.S.R. 82-62, 1982 WL 31386 (S.S.A.) at *3. S.S.R. 82-62 further states that adequate documentation must be obtained to support the decision, including "factual information about those work demands which have a bearing on the medically established limitations." Thus, "[d]etailed information about . . . mental demands and other job requirements must be obtained as appropriate." S.S.R. 82-62, 1982 WL 31386 (S.S.A.) at *3; *see Sivilay v. Apfel*, 143 F.3d 1298, 1299 (9th Cir. 1998) (remanding to ALJ to "investigate fully the demands

of the applicant's past work and compare them to the applicant's residual mental and physical capabilities"). Any determination regarding a claimant's ability to perform past work "must be developed and explained fully in the disability decision" and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." S.S.R. 82-62, 1982 WL 31386 (S.S.A.) at *3.

Here, the ALJ made no specific finding as to how plaintiff's past relevant work as actually performed differed from how that work is generally performed. Plaintiff described her past relevant work as consisting of six hours sitting, which is beyond the five hours sitting the ALJ included in plaintiff's RFC. (AR 95.) There is no evidence in the record that plaintiff actually could perform her past relevant work with a five hour sitting limitation. The only evidence in the record demonstrates the contrary. The ALJ made no finding that plaintiff had incorrectly described her past relevant work. Therefore, remand is required with respect to the ALJ's step four determination.

2. <u>Whether the ALJ erred in evaluating the claimant's residual functional capacity at step four by improperly rejecting the less than sedentary opinion of the treating physician, Dr. Khoo-Miyaki, in favor of the testifying medical witness</u>.

Plaintiff contends that the ALJ improperly rejected the findings of plaintiff's treating physician contained on a "Physical Residual Functional Capacity Questionnaire." (*See* AR 512 - 16.) Defendant contends that the ALJ properly relied on the testimony of the testifying medical consultant who had reviewed the medical records and observed plaintiff testify at the hearing.

The Ninth Circuit has held that an ALJ may reject a treating physician's uncontradicted opinion on a medical impairment or the ultimate issue of disability only with "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)) (internal quotation marks omitted). If the treating physician's opinion on the issue of disability is controverted, the ALJ must

1  still provide "specific and legitimate" reasons supported by substantial evidence in the
2  record in order to reject the treating physician's opinion.  *Lester*, 81 F.3d at 830;
3  *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).  "The ALJ could meet
4  this burden by setting out a detailed and thorough summary of the facts and
5  conflicting clinical evidence, stating his interpretation thereof, and making findings."
6  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks
7  omitted).

8  Where a non-examining physician's opinion contradicts that of the treating
9  physician but rests on the same clinical findings considered by the treating physician,
10 "the opinion of the treating physician may be rejected only if the ALJ gives specific,
11 legitimate reasons for doing so that are based on substantial evidence in the record.
12 *Id*. [881 F.2d] at 751, 755.  *See Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)
13 (applying test where ALJ relied on contradictory opinion of non-examining medical
14 advisor)."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

15 Thus, in addition to the testimony of a non-examining medical advisor, the ALJ
16 must have relied on other evidence to support a decision to reject the opinion of
17 plaintiff's treating physician.  In other words, the non-examining physician's
18 conclusions, by themselves, are not sufficient for the ALJ to reject the treating
19 physician's conclusions.  The ALJ set out a detailed summary of the medical records
20 and found that the record did not support the findings on the "Physical Residual
21 Functional Capacity Questionnaire."  Presumably, the same rationale applies to the
22 findings of the State agency medical consultant who, on the same medical record,
23 found that plaintiff was limited to sedentary work.  (AR 410 - 14.)  The state of the
24 record is that the treating physician and the State agency medical consultant both
25 found limitations in excess of those found by the non-examining medical consultant.
26 Under these circumstances the Court cannot conclude that the ALJ's reference to the
27 medical record constituted substantial evidence to support the non-examining
28 consultant's findings.  On the contrary, the ALJ appears simply to have substituted his

own medical opinion for that of the treating physician.  As a general rule, an ALJ may not reject a physician's opinion in favor of his own interpretation of the medical evidence; nor may he substitute his own judgment for that of a physician's.  *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Rohan v. Chater*, 98 F.3d 966, 970-71 (9th Cir. 1996).  Therefore, remand is required on this issue for the ALJ to properly address the findings of the treating physician and the State agency medical consultant.

3.  <u>Whether the ALJ failed to make proper credibility findings as to the claimant's testimony</u>.

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's testimony.  Defendant counters that the ALJ permissibly relied on plaintiff's own description of her daily activities and the meager objective evidence of limitations contained in the medical records.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged . . . ." (the *Cotton* test).  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (internal quotation marks omitted); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity.  *Bunnell*, 947 F.2d at 345; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . , a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain") (internal citation omitted); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying *Bunnell* to subjective physical complaints).  However, an ALJ may reject a claimant's allegations upon:  (1) finding evidence of malingering; or (2) providing clear and convincing reasons for so doing.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

1    The following factors may be considered in weighing the claimant's credibility in the absence of evidence of malingering:  (1) his reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p, 1996 WL 374186 (S.S.A.).  The ALJ may also use "ordinary techniques of credibility evaluation." *Thomas*, 278 F.3d at 960.  "General findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (1998).  The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints.  *Id.*; *Benton*, 331 F.3d at 1041.  The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the record and is "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ." *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted); *see also Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) (ALJ must "point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims").

After summarizing the medical records, the ALJ provided the following additional reasons for discounting plaintiff's testimony:

> Moreover, the claimant's activities of daily living are inconsistent with her allegations of totally disabling physical and mental impairments.  In a third party statement, she was able to take care of the pets by feeding them.  She was able to socialize with friends, drive, shop weekly and go to church (Exhibit 4/E).  The medical record also documented that she was working as a real estate agent while seeking treatment for her

///

8

1       illnesses. The claimant was capable of attending the hearing and
2       participating in her own behalf.
3 AR 17.
4     Where a claimant is able to spend a substantial part of his day in activities that
5 would translate to a workplace setting, the ALJ is entitled to give less weight to his
6 allegations of disabling pain. *Burch*, 400 F.3d at 680-81; *see also Rollins v.*
7 *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (fibromyalgia patient's claims of
8 disabling pain undermined by daily activities such as being sole caregiver of two
9 young children; cooking; housekeeping; doing laundry; and leaving house daily to go
10 to son's school, son's after-school activities, doctor's appointments, and the grocery
11 store). An ALJ may also, in general, discount a claimant's testimony where it is
12 internally inconsistent, as when, *e.g.*, the claimant's daily activities belie the claimed
13 severity of his symptoms. *See Thomas*, 278 F.3d at 958-59. However, the law does
14 not require a claimant to be a vegetable in order to warrant a disability finding. "[T]he
15 mere fact that a plaintiff has carried on certain daily activities such as grocery
16 shopping, driving a car, or limited walking for exercise, does not in any way detract
17 from her credibility as to her overall disability. One does not need to be 'utterly
18 incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th
19 Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The relevant
20 question is whether the physical activities at issue consume a "*substantial part*"
21 (*Vertigan*, 260 F.3d at 1050 (emphasis in original); *Fair*, 885 F.2d at 603) of the
22 plaintiff's day, as "many home activities are not easily transferrable to what may be
23 the more grueling environment of the workplace, where it may be impossible to
24 periodically rest or take medication." *Fair*, 885 F.2d at 603.
25     The only evidence of the amount of work plaintiff performed in her position as
26 a real estate agent came from plaintiff's testimony. At the hearing, plaintiff described
27 the job as being right across the street from her abode. She stated that she goes to the
28 ///

office "two, maybe three days a week, two hours at the most." (AR 27.) She also stated that when she "get[s] exhausted and tired, [she] go[es] home." (*Id.*)

The third party statement that the ALJ relied on to demonstrate plaintiff's daily activities revealed the following: Plaintiff stays in bed most of the day; feeds the pets (the third party walks them); cannot cook because she is unable to stand in front of the stove for long; does not do any chores inside or outside the house; can drive a car only for short distances, such as to doctors appointments and church; shops for personal items once a week; speaks on the telephone and uses a computer to send e-mails to friends; and goes to church "not often." (AR 113 - 20.)

As described, these physical activities do not consume a substantial part of plaintiff's day and certainly are not easily transferrable to the environment of a full time job. Moreover, having determined that the medical evidence of plaintiff's underlying impairments could reasonably be expected to produce the symptoms alleged, the ALJ cannot rely on medical findings alone to discredit the alleged severity of the symptoms. Therefore, remand is required for the ALJ to properly address plaintiff's credibility.

4.   <u>Whether the ALJ erred in evaluating the severity of the claimant's mental impairment and associated functional limitations.</u>

Plaintiff contends that the ALJ improperly found that plaintiff's mental impairments were not severe. Plaintiff points out that her treating physician found that plaintiff could only work in a low stress environment. Defendant contends that the medical records support the ALJ's finding that plaintiff's mental condition did not cause any functional limitations.

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). In order to determine an alleged mental impairment's severity, Social Security adjudicators utilize the so-called "psychiatric review technique." Under the technique, adjudicators assess a claimant's mental restrictions

in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[1]  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  If the adjudicator finds that the claimant had no episodes of decompensation and only mild limitations (or none at all) in the other functional areas, the adjudicator will "generally" conclude that the mental impairment is not severe.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).[2]

The ALJ did not address the treating physician's finding that plaintiff could only work in low stress environments.  An ALJ effectively rejects a treating physician's opinion where he ignores it in his opinion and makes contrary findings.  "[The] failure to offer reasons for doing so [is] legal error."  *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).  Therefore, remand is required with respect to this issue for the ALJ to address the treating physician's opinion.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is reversed and the matter is remanded for further proceedings consistent with the foregoing.

**IT IS SO ORDERED.**


DATED: October 26, 2010

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge

---

[1] Episodes of decompensation are exacerbations of or temporary increases in symptoms or signs, accompanied by a loss of adaptive functioning.  20 C.F.R. Part 404, subpt. P, app. 1, § 12:00(C)(4).

[2] The psychiatric review technique is summarized on the Psychiatric Review Technique Form (the "PRTF"), which the state agency physician used in assessing plaintiff's alleged mental impairments.  *See* 20 C.F.R. §§ 404.1520a(e), 416.920a(e); *see also* AR 418 - 27.